# EXHIBIT B

Execution Copy

# GENERAL TERM SHEET
# FOR PLAN SUPPORT AND
# DEBTOR-IN-POSSESSION FINANCING

## TO

## INTEGRAL NUCLEAR ASSOCIATES, LLC, AND CERTAIN SUBSIDIARIES AND AFFILIATES[1] (COLLECTIVELY, "DEBTORS")

## FROM

## MONARCH MEDICAL PET SERVICES, LLC OR ITS NOMINEE ("SPONSOR" or "MONARCH")

### February 3, 2011

THIS TERM SHEET SETS FORTH THE GENERAL TERMS AND CONDITIONS UPON WHICH (A) THE SPONSOR SHALL PROVIDE DEBTOR-IN-POSSESSION FINANCING TO THE DEBTOR AND (B) THE DEBTORS SHALL BE REORGANIZED UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE WITH FINANCIAL SUPPORT FROM THE SPONSOR. ALL TERMS SET FORTH HEREIN ARE SUBJECT TO THE FOLLOWING:

       (1)    THE SATISFACTION OF CERTAIN CONDITIONS PRECEDENT;

       (2)    THE NEGOTIATION AND EXECUTION OF DEFINITIVE DOCUMENTS, INCLUDING A PLAN SUPPORT AGREEMENT AND PLAN OF REORGANIZATION FOR THE DEBTORS, AS WELL AS INTERIM AND FINAL DIP FINANCING ORDERS; AND

       (3)    THE APPROVAL BY SPONSOR OF THE "APPROVED BUDGET" SHOWING PROJECTED WEEKLY CASH RECEIPTS, CASH DISBURSEMENTS, AND OTHER FINANCIAL INFORMATION REQUIRED BY SPONSOR FOR EACH WEEK FROM FEBRUARY 3, 2011, THROUGH APRIL 30, 2011.

---

[1] The Plan Support Agreement contemplated hereby will identify those affiliates of Integral Nuclear Associates that will seek relief in bankruptcy and be covered by the Plan.

## I.    Terms and Conditions for DIP Financing

Borrowers:                 Debtors

Sponsor:                   Monarch

Bankruptcy Case:           On February 3, 2011 (the "<u>Petition Date</u>"), the Debtors filed a
                           voluntary petition for relief under chapter 11 of the United States
                           Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy
                           Code</u>") in the United States Bankruptcy Court for the District of
                           New Jersey (the "<u>Bankruptcy Court</u>").

Commitment Amount:         The Sponsor is willing to provide a debtor-in-possession revolving
                           line of credit facility (the "<u>DIP Facility</u>") to Debtors in an amount
                           not to exceed $300,000.00 to finance the Debtors' operations
                           during its chapter 11 bankruptcy case in the Bankruptcy Court,
                           including the payment of professional fees and expenses incurred
                           and to be incurred in connection therewith.

DIP Documents:             The DIP Facility shall be evidenced by this Term Sheet and by
                           interim and final financing orders (the "<u>Interim Financing Order</u>"
                           and "<u>Final Financing Order</u>"), and any other instrument,
                           agreement, or ancillary document as the Sponsor deems necessary
                           (collectively, the "<u>DIP Documents</u>").  The DIP Documents, as well
                           as the Interim and Final Financing Orders, shall be in form and
                           substance acceptable to the Debtors and the Sponsor, and all
                           motions relating thereto, shall be in form and substance reasonably
                           acceptable to the Debtors and the Sponsor and shall incorporate the
                           provisions of this Term Sheet.

Approved Budget:           The Approved Budget shall be the cash flow budget attached
                           hereto as <u>Exhibit A</u>.

Interim Amount:            Upon entry of the Interim Financing Order, $150,000.00 of the
                           DIP Facility shall be immediately available for use by the Debtors
                           for its operating costs and expenses set forth on the Approved
                           Budget arising during the interim period prior to the Bankruptcy
                           Court's entry of the Final Financing Order.

Use of Proceeds:           The Debtors shall use the DIP Facility exclusively for ordinary and
                           necessary operating costs and expenses in the amounts and for the
                           purposes reflected in the Approved Budget.

Commitment Period:         The Commitment Period shall be the Petition Date through the
                           Commitment Termination Date (as defined below).

Commitment Termination Date:

The DIP Facility shall terminate on the earliest of the following (the "Commitment Termination Date"):

    (a)    May 16, 2011;

    (b)    the indefeasible payment in full of the obligations owing to the Sponsor under the DIP Facility;

    (c)    the effective date of a confirmed chapter 11 plan resulting in the Debtors' emergence from chapter 11; or

    (d)    upon the occurrence and during the continuance of an Event of Default (as defined below).

Collateral:    The Sponsor shall receive Section 364(c) security interests in and liens on all of the assets, real and personal, of the Debtors and their bankruptcy estates (excluding only causes of action under chapter 5 of the Bankruptcy Code), whether acquired prior to or after the Petition Date (as defined above), whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof (including without limitation, claims of the Debtors against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements thereof, and wherever located. Without limiting the foregoing, the Sponsor shall receive a fully perfected security interest in all of the existing and after acquired real and personal, tangible and intangible, assets of Debtors, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contracts, contract rights, inventory, instruments, documents, licensing agreements, securities (whether or not marketable), equipment, fixtures, leasehold interests and real property interests, franchise rights, patents, trademarks, tradenames, copyrights, intellectual property, general intangibles, (but exclusive of causes of action under chapter 5 of the Bankruptcy Code), investment property, commercial tort claims, and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds (collectively, the "Collateral").

The Sponsor's liens in the Collateral shall be subject and subordinate only to (a) any valid, prior, and otherwise unavoidable, perfected liens and security interests in the Collateral; and (b), the fees and expenses of Debtors' Court approved counsel, but only with respect to such fees and expenses as are incurred for services actually performed by Debtors' counsel through the Commitment Termination Date ((a) and (b) are referred to collectively, as the "Permitted Liens").

Super-Priority Claim:    The Sponsor shall receive a super-priority claim to secure its post-petition advances and extensions of credit under 11 U.S.C. § 364(c)(1) with priority over any and all administrative expenses specified in Bankruptcy Code Sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1114.

Interest Rate:    The rate of interest charged for obligations under the DIP Facility will be 14% (the "Interest Rate").  Interest calculations shall be based on a 360 day year and actual days elapsed.  Upon the occurrence and during the continuance of an Event of Default, the Interest Rate shall be increased to 18%.

Origination Fee:    Origination fee of five percent (5%) of the loan commitment amount due at closing.

Costs and Fees:    Debtors agree to pay or reimburse the Sponsor for all reasonable fees, costs and expenses (including but not limited to attorneys' fees and expenses), reasonably incurred or paid by the Sponsor in connection with: (i) preparation, negotiation, interpretation, implementation, administration or amendment of the DIP Facility and the DIP Documents; (ii) collection of amounts outstanding under the DIP Facility as evidenced by the DIP Documents; and (iii) the administration, supervision, protection of, or realization on the Collateral securing the DIP Facility.  All such costs and expenses shall be added to the principal sum of the DIP Facility and shall become due and payable on the Commitment Termination Date.

Financial Covenants:    Compliance with the Approved Budget and the Permitted Variance (as defined below) associated therewith.

Covenants Generally:    The DIP Documents and/or the Interim and Final Financing Orders shall memorialize and approve the provisions of this Term Sheet and shall contain such usual and customary affirmative and negative covenants for facilities of this type, including the following:

Reporting.  The Debtors shall prepare and furnish to Sponsor (i) on or before the Petition Date, the Approved Budget, and (ii) on or before the second Business Day of each week during the Commitment Period, a report in form reasonably acceptable to Sponsor setting forth, with respect to the immediate week as of the preceding Saturday, a detailed analysis of receipts and expenditures, comparing actual receipts and disbursements for such weekly (and cumulatively for the Commitment Period) to the projected receipts and disbursements set forth in the Approved Budget, including without limitation, all variances in actual expenditures from those projected in the Approved Budget (including any Permitted Variance), by line item, together with an explanation of all material variances (the "Variance Report").

In addition, the Debtors shall furnish Sponsor and its counsel with a copy of (i) each monthly operating report filed by the Debtors in the chapter 11 case as required by the Bankruptcy Court, the United States Trustee or applicable law contemporaneously with the filing of such report; and (ii) monthly financial statements within fourteen (14) Business Days of the previous month's end. The Debtors shall furnish Sponsor with such other and further financial reports as Sponsor may reasonably request.

Budget Compliance.  Debtors shall not make or commit or agree to make any expenditures in any given week or on a cumulative basis which are not set forth in the Approved Budget, subject to a variance tested on a weekly and cumulative basis not to exceed 10% of such aggregate budgeted expenditures as set forth in the Approved Budget in a line item-by-line item basis (the "Permitted Variance"). All expenditures shall require the approval of, and all checks must be signed by, the Debtors' Chief Restructuring Officer.

Changes in Management.  Upon the entry of the Interim Financing Order, Ronald Lissak shall resign as the Debtors Chief Executive Officer. He shall thereafter be employed solely as the President and Director of Sales for Integral Nuclear Associates, LLC. Upon the entry of the Interim Financing Order, Jack Firriolo shall be employed as Interim Chief Financial Officer of the Debtors. As Interim Chief Financial Officer, Jack Firriolo shall have exclusive authority to manage the day to day affairs of the Debtors, exclusive authority to make personnel changes, the exclusive authority to approve disbursements (and sole check writing authority) and the authority to propose and prosecute the Plan in accordance with the Plan Support Agreement. The Debtors shall not terminate Jack Firriolo as their Interim Chief Financial Officer nor limit the scope of his authority without Bankruptcy Court approval.

<u>Assumption of Plan Support Agreement; Prosecution of Plan</u>.

(a)    On or before the second (2nd) business day following the Petition Date:

(i)    the Debtors shall file a motion seeking to assume the Plan Support Agreement (and approving the Termination Fee provided for thereunder) between the Debtors and the Sponsor; and

(ii)    the Debtors shall file the Plan and Disclosure Statement contemplated by the Plan Support Agreement, together with a Motion seeking approval of the Disclosure Statement.

(b)    The Debtors shall also seek and use commercially reasonable efforts to obtain entry of the following Orders from the Bankruptcy Court:

(i)    an Order approving the assumption of the Plan Support Agreement within twenty-one (21) days of the PDS Filing Date (as that term is defined below),

(ii)    an Order approving the Disclosure Statement within forty-five (45) days after the PDS Filing Date, and

(iii)    an Order confirming the Plan within ninety (90) days after the PDS Filing Date.

(c)    The Debtors or their counsel shall serve a copy of the Disclosure Statement, Plan and all related pleadings and notices on (A): (1) all parties to executory contracts which the Debtors propose to assume (and/or assume and assign) under the Plan, (2) all Persons that file requests for notices under Bankruptcy Rule 9010(b), (3) the Office of the United States Trustee, (4) all Persons on the Master Mailing List filed by the Debtors with the Bankruptcy Court, (5) all Persons that the Debtors are required to provide notice to pursuant to Bankruptcy Rule 2002, and (B) certain: (1) Governmental Authorities with taxation power that have, or as a result of the reorganization may have, claims, contingent or otherwise, against the Debtors, and (2) any other Person reasonably requested by the Sponsor.

(d)    The Debtors shall use commercially reasonable efforts to provide the Sponsor with copies of all motions, applications, and supporting papers prepared by or on behalf of the Debtors (including forms of orders and notices to interested Persons) directly relating to Debtors or the Plan Support Agreement at least two (2) Business Days prior to the filing thereof

with the Bankruptcy Court so as to allow the Sponsor to provide reasonable comments for incorporation into same.

Maintenance of Existence; Compliance.  Debtors shall (i) preserve, renew and keep in full force and effect its organizational existence, (ii) take all reasonable action to maintain all licenses, contracts, rights, privileges and franchises necessary or desirable in the normal conduct of its business, and (iii) except when nonpayment is permitted or payment is prohibited by the Bankruptcy Court or the Bankruptcy Code, comply with all contractual obligations and applicable laws until such time as such contract is rejected with approval from the Bankruptcy Court.  Debtors shall not reject any executory contract without the prior written consent of the Sponsor.

Maintenance of Property; Insurance.   Debtors will keep all property useful and necessary in its business in good working order and condition, ordinary wear and tear excepted.  Debtors shall not dispose of property, or compromise claims with respect to property, except in the ordinary course of business; provided, however, Debtors may dispose of property and compromise claims if such disposition or compromise does not have a material adverse impact on the Debtors' business.  Debtors shall maintain for themselves and their respective estates, or shall cause their respective estates to maintain, in full force and effect insurance policies and programs reflecting coverage that is reasonably consistent with prudent industry practice and will notify Sponsor of any material change to such coverage.

Indebtedness.   Debtors shall not create, issue, incur, assume, become liable in respect of or suffer to exist any indebtedness, except (i) indebtedness incurred pursuant to this Term Sheet, and (ii) indebtedness incurred in the ordinary course of business and in accordance with the Approved Budget ((i) and (ii) are referred to collectively, as the "Permitted Indebtedness").

Liens.  Debtors shall not, directly or indirectly, create, incur or assume after the Petition Date, any lien on or with respect to any of the Collateral except for Permitted Liens.

Dispositions of Property.  Except with the written consent of the Sponsor and to the extent authorized by order of the Bankruptcy Court upon notice to the Sponsor, Debtors shall not dispose of, or enter into any contract to dispose of, any of its property or assets, whether now owned or hereafter acquired, outside of the ordinary course of business.

Use of Proceeds.  Debtors shall not use the proceeds of the DIP Facility, the Collateral, or the proceeds of any of the foregoing (A) for any purpose that is not permitted under the Interim or Final Financing Orders, (B) in a manner not shown in the Approved Budget or in an amount greater than any single line item or in the aggregate amount set forth in the Approved Budget (subject to the Permitted Variance), or (C) to investigate, object, contest or raise in any proceeding any defense to the validity, perfection, priority, extent or enforceability of the DIP Facility (including the liens granted in connection therewith) or the claims of Sponsor or to initiate or prosecute any claims, causes of action, adversary proceedings or other litigation against the Sponsor.

Chapter 11 Claims and Liens.  Except for Permitted Liens, Debtors shall not incur, create, assume, suffer to exist or permit any administrative expense, priority, unsecured claim, or super-priority claim or lien in each case which is pari passu with or senior to the super-priority claims of Sponsor hereunder, or under the other DIP Documents or the Interim and Final Financing Orders, or apply to the Bankruptcy Court for authority to do so.

Events of Default:    Each of the following shall be an "Event of Default" under the DIP Documents:

Failure to Repay DIP Facility.  Subject to the Required Notice (as defined below), Debtors shall fail to pay any of the obligations consisting of principal, interest, fees, costs or charges with respect to the DIP Facility as and when such payments are due.

Breach of Covenants.  Subject to the Required Notice, Debtors shall fail or refuse to duly and punctually perform or observe any agreement, covenant or obligation contained in this Term Sheet, the Plan Support Agreement or in the DIP Documents, including without limitation, payment terms, general covenants, and financial covenants.

Orders.  (i) From and after the date of entry thereof, the Interim Financing Order and the Final Financing Order shall cease to be in full force and effect, or (ii) subject to the Required Notice, Debtors shall default in the due performance or observance by it of any

term, covenant or agreement contained in the Interim Financing Order, the Final Financing Order or the Plan Support Agreement (following entry of an Order approving the assumption of it by the Debtors).

Conversion, Dismissal, Appointment of Trustee or Examiner.  (A) The Debtors' chapter 11 cases shall be dismissed or converted to cases under chapter 7 of the Bankruptcy Code or the Debtors shall file a motion or other pleading seeking the dismissal of their chapter 11 cases under section 1112 of the Bankruptcy Code or otherwise; or (B) a trustee, or an examiner with enlarged powers related to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code, shall be appointed.

Termination of Exclusivity.  The Bankruptcy Court shall enter an order terminating, shortening or modifying the so-called exclusive period provided for under Section 1121 of the Bankruptcy Code.

Budget Compliance.  Debtors shall make or commit or agree to make any expenditure in any given week or on a cumulative basis which are not set forth in the Approved Budget, subject to the Permitted Variance.

Changes in Management.  Jack Firriolo shall cease to be the Debtors' Interim Chief Financial Officer or the scope of his authority shall be changed without the written consent of the Sponsor.

Failure of Certain Conditions.  If any of the following shall occur (or not occur):

(a)     an Interim Financing Order has not been entered by the Bankruptcy Court within seven (7) days of the Petition Date;

(b)     a Final Financing Order has not been entered by the Bankruptcy Court within twenty-one (21) days of the Petition Date;

(c)     an Order approving the assumption of the Plan Support Agreement (and the Termination Fee provided for thereunder) has not been entered by the Bankruptcy Court within twenty-one (21) days of the Petition Date,

(d)     an Order approving the Disclosure Statement has not been entered by the Bankruptcy Court within forty-five (45) days of the PDS Filing Date (as defined below),

(e)     an Order confirming the Plan has not been entered

- 9 -

with ninety (90) days of the PDS Filing Date, and

      (f)    A Termination Event shall occur under the Plan Support Agreement.

Exercise of Remedies:      Upon the occurrence of an Event of Default,

      (a)    the Sponsor have no further obligation to make advances under the DIP Facility and the Debtors shall have no right to use of any cash collateral, and

      (b)    after three (3) Business Days notice, as provided in the Interim and Final Financing Orders (the "Required Notice"), the Sponsor shall be authorized, at its option, to take any and all actions and exercise any and all remedies available to it under the DIP Documents and applicable law upon motion to the Bankruptcy Court, including without limitation taking possession of, protecting, selling, leasing or otherwise realizing upon the Collateral and any other property of the estates of the Debtors which serves as Collateral for the DIP Facility.

Conditions Precedent:      The commitment of the Sponsor to provide the DIP Facility shall be conditioned upon satisfaction of the following conditions precedent:

      (a)    A duly authorized bankruptcy petition shall have been filed by or against the Debtors, and a bankruptcy case is then pending under Chapter 11 of the Bankruptcy Code.

      (b)    All of the DIP Documents shall be in form and substance satisfactory to Sponsor, the Debtors and their respective counsel and shall have been executed by each of the signatories thereto and accepted by Sponsor, and the Debtors shall be in compliance with all of the terms thereof;

      (c)    The Interim Financing Order approving the DIP Facility shall have been entered by the Bankruptcy Court, shall be in full force and effect and shall not have been vacated, reversed, amended, modified, or stayed in any respect (and, if such order is the subject of a pending appeal, no performance of any obligation of any party shall have been stayed pending such appeal);

      (d)    The Interim Financing Order, shall be in form and substance satisfactory to Sponsor, the Debtors and their respective counsel in their sole discretion; and

      (e)    Sponsor shall have received and approved the Approved Budget in form and substance acceptable to Sponsor and Debtors.

Governing Law:      New Jersey.

II.    **Terms and Conditions for Plan Support**

The Plan:

The Debtors shall propose a Plan of Reorganization (the "<u>Plan</u>") pursuant to which the Debtors shall be reorganized under Chapter 11 of the Bankruptcy Code consistent with the Classification and Treatment of Claims below.

The Restructuring:

The Plan shall be predicated on a restructuring, whereby the Sponsor provides the following consideration to the Debtors upon the effective date: (a) cash totaling $4,974,000 minus outstanding amounts owed pursuant to the DIP Facility (the "<u>Plan Fund</u>"); and (b) conversion of amounts owed under the DIP Facility into 100% of the equity interests in the Reorganized Debtors ((a) and (b) are hereinafter referred to collectively, as the "<u>Investment</u>"). The Plan Fund shall be used to make the payments required under the Plan.

Classification and Treatment of Claims:

**Administrative Claims** (including so-called cure obligations concerning executory contracts to be assumed and/or assumed and assigned under the Plan) – Shall be paid, in full, from the Plan Fund;

**Priority Claims** – Shall be paid, in full, from the Plan Fund;

**Class 1 (Tygris)** – From the Plan Fund, Tygris (or the holder of the Tygris claim) shall be paid $2,600,000 in full satisfaction of its claims against the Debtors;

**Class 2 (Siemens)** – From the Plan Fund, Siemens shall be paid $485,000 in full satisfaction of its claims against the Debtors;

**Class 3 (Phillips)** – All of the Debtors' right, title and interest in and to the property securing the Class 3 secured claim shall be conveyed to Philips, free and clear of all liens, claims, encumbrances and other interests. Phillips shall receive such property in full satisfaction of its claims against the Debtors;

**Class 4 (US Bank)** – All of the Debtors' right, title and interest in and to the property securing the Class 4 secured claim shall be conveyed to US Bank, free and clear of all liens, claims, encumbrances and other interests. In addition, if the amount of the Class 4 secured claim of US Bank exceeds the value of the collateral securing such claim, US Bank shall be entitled to a non-priority unsecured claim on account of such deficiency claim, which shall be treated as a Class 5 unsecured claim.

> **Class 5 (Unsecured Creditors)** – After payment of: (a) amounts owed to holders of allowed Administrative Claims, Priority Claims, and Claims in Classes 1, 2 and 4; and (b) the Transaction Fee described below, holders of allowed non-priority unsecured claims shall receive, in full and complete satisfaction of such claims, one or more *pro rata* distributions of amounts remaining in the Plan Fund.

Treatment of Equity Interests:

> On the effective date, existing equity interests in each Debtor shall be cancelled. New equity interests shall be issued to the Sponsor or to one or more nominees of the Sponsor.

Board of Directors of Reorganized Debtors:

> On the effective date, each of the Debtors' existing managers, officers and directors shall be deemed to have resigned, and new managers, officers and directors shall be appointed by the Sponsor. The identity and compensation for each such person shall be disclosed to the Bankruptcy Court prior to confirmation.

Continued Employment of Ronald Lissak:

> From and after the effective date, Ronald Lissak shall be employed by the Reorganized Debtors under a mutually acceptable written employment agreement containing the following material terms and conditions (including restrictive covenants):
>
> (a)  annual salary of [REDACTED]
>
> (b)  position of President and Head of Sales;
>
> (c)  monthly car allowance of [REDACTED]
>
> (d)  monthly parking allowance of [REDACTED]
>
> (e) [REDACTED] non-compete agreement to begin at the end of employment with the Reorganized Debtors.

Executory Contracts:

On the effective date, the Debtors shall (i) assume such contracts as may be designated by the Sponsor on or before the date on which the Disclosure Statement is approved by Order of the Bankruptcy Court and (ii) reject all other executory contracts.

Transaction Fee:

On the effective date, $84,000 shall be paid from the Plan Fund to Debtors' Court approved special counsel Donoghue, Barrett & Singal, P.C.

- 12 -

Termination of Plan Support Agreement:

This Agreement may be terminated, upon the occurrence of any of the following events (each, a "Termination Event"):

(a)    By the Sponsor if, on or before February 4, 2011, a duly authorized bankruptcy petition has not been filed by or against the Debtors, and a bankruptcy case is not then pending under Chapter 11 of the Bankruptcy Code.

(b)    By the Sponsor if the Debtors shall have breached any of its material obligations in connection with the DIP Facility or the Plan Support Agreement (subject to Required Notice where applicable);

(c)    By the Sponsor, if voluntary petitions for relief shall not have been filed by each of the Debtors within two (2) Business Days of the execution of the Plan Support Agreement or shall have been dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or an interim or permanent trustee shall have been appointed, or a trustee, responsible officer or examiner with powers beyond the duty to investigate and report (as set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in the Chapter 11 cases;

(d)    By the Sponsor if the Plan, Disclosure Statement, and a Motion to assume the Plan Support Agreement shall not have been filed by the Debtors on or before February 15, 2010 (the "PDS Filing Date");

(e)    By the Sponsor if a Motion to Assume the Plan Support Agreement is not filed by the Debtors on or before February 7, 2011, and an order of the Bankruptcy Court granting the Motion to assume the Plan Support Agreement, including approval of the payment of the Termination Fee provided for thereunder, shall not have been entered on or before the twenty-first (21st) day after the Petition Date;

(f)    By the Sponsor if the Debtors cease to have the exclusive right to file a plan or disclosure statement pursuant to section 1121 of the Bankruptcy Code;

(g)    By the Sponsor if an order of the Bankruptcy Court approving the Disclosure Statement shall not have been entered within forty-five (45) days of the PDS Filing Date;

- 13 -

(h)     By the Sponsor if an Order of the Bankruptcy Court confirming the Plan shall not have been entered within ninety (90) days of the PDS Filing Date;

(i)     By the Sponsor if any court (including the Bankruptcy Court) shall have entered an order finding any portion of the Plan Support Agreement to be unenforceable;

(j)     By the Sponsor if the effective date of the Plan shall not have occurred within 100 days of the PDS Filing Date (the "Outside Date"); and

(k) By the Sponsor upon the Commitment Termination Date with respect to the DIP Facility;

Termination Fee:     If the Plan Support Agreement is terminated for any reason following the entry of an Order by the Bankruptcy Court approving its assumption by the Debtors, then in addition to amounts owed to the Sponsor in connection with the DIP Facility, the Debtors shall each become indebted to the Sponsor, and the Sponsor shall become entitled to receive a fee, in the sum of One Hundred Fifty Thousand Dollars ($150,000), which fee shall be added to the principal balance of the DIP Facility and earn interest thereon until paid in full.

Counterparts; Facsimile Signatures:

This Term Sheet may be executed in one or more counterparts, and by different parties hereto on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The parties acknowledge and agree that this Term Sheet may be executed via facsimile (including computer-scanned or other electronic reproduction of the actual signatures) and that delivery of a facsimile signature by electronic or physical means shall be effective to the same extent as delivery of an original signature.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Term Sheet as of the date first written above.

Debtors:

INTEGRAL NUCLEAR
ASSOCIATES, LLC

By:
Name:
Title:

Sponsor:

MONARCH MEDICAL PET
SERVICES, LLC

By:
Name:
Title:

- 15 -